IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SHIRLEY, individually and as trustee of the JOHN F. SHIRLEY and JULIE E. SHIRLEY 2003 TRUST, and JULIE SHIRLEY,<br><br>    Plaintiffs,<br><br>  v.<br><br>WACHOVIA MORTGAGE FSB, WELLS FARGO BANK N.A., and DOES 1-10,<br><br>    Defendants. | Case No. 10-03870-SC<br><br>ORDER GRANTING DEFENDANT'S AND THIRD-PARTY DEFENDANT'S MOTIONS FOR <u>SUMMARY JUDGMENT</u> |
| WACHOVIA MORTGAGE, a division of WELLS FARGO BANK, N.A., formerly known as WACHOVIA MORTGAGE, FSB,<br><br>    Third-Party Complainant,<br><br>  v.<br><br>LSI TITLE COMPANY; LENDER PROCESSING SERVICES, INC.; FIDELITY NATIONAL INFORMATION SERVICES, INC.; and ROES 1 through 10, inclusive,<br><br>    Third-Party Defendants. | |

## I. INTRODUCTION

Plaintiffs John Shirley ("Shirley") and Julie Shirley (collectively, "Plaintiffs") bring this action against Defendants Wachovia Mortgage FSB ("Wachovia") and its successor in interest, Wells Fargo Bank, N.A. ("Wells Fargo").[1] The case arises out of alleged irregularities in closing documents executed in connection with the refinancing of Plaintiffs' home in 2008. Plaintiffs allege that someone forged certain dates and initials on these closing documents, a Truth-in-Lending Disclosure Statement ("TILDS") and Notice of Right to Cancel ("NRC"), and that, consequently, he is entitled to rescission of his loan under the Truth-in-Lending Act ("TILA"). Wachovia brings a third-party complaint against LSI Title Company ("LSI"), the escrow holder on Plaintiffs' loan. Wachovia alleges that LSI is responsible for any irregularities in Plaintiffs' TILDS and NRC documents and seeks indemnity for any fees incurred to defend against Plaintiffs' suit, as well as any damages incurred as a result of a settlement or adverse judgment.

Wachovia now moves for summary judgment against Plaintiffs, and LSI moves for summary judgment against Wachovia. ECF Nos. 48 ("LSI MSJ"), 51 ("Wachovia MSJ"). These motions are fully briefed. ECF Nos. 54 ("Pls.' Opp'n"), 55 ("Wachovia Opp'n"), 56 ("LSI Reply"), 57 ("Wachovia Reply").[2] Having reviewed all of the parties' briefs and arguments, the Court finds these matters suitable for adjudication without oral argument. As detailed

---

[1] Hereinafter, the Court refers to Wells Fargo as Wachovia, its predecessor in interest.

[2] LSI has also filed a Statement of Non-Opposition to Wachovia's motion for summary judgment against Shirley. ECF No. 53.

2

below, the Court GRANTS Wachovia's motion for summary judgment against Plaintiffs and LSI's motion for summary judgment against Wachovia.

**II. BACKGROUND**

    **A. Plaintiffs v. Wachovia**

Plaintiffs purchased their home in Sonoma, California in June 2004 for $1.96 million. Dolan Decl. Ex. A.[3] On February 29, 2008, Plaintiffs acquired a $1.76 million loan from Wachovia to refinance their home.[4] Dolan Decl. Exs. B, C. In April 2010, Plaintiffs defaulted on the loan and, shortly thereafter, demanded rescission, based on two purported TILA violations. Id. Ex. L. On June 7, 2010, Wachovia mailed Plaintiffs a "Pre-Foreclosure Reinstatement Quote," informing them that the loan was $30,101.44 in arrears. Id. Ex. M. Plaintiffs subsequently furnished Wachovia with the delinquent funds, preventing foreclosure. Id. ¶ 14.

On July 26, 2010, Plaintiffs filed the instant action in state court. ECF No. 1 ("Not. of Removal"). Wachovia removed the action to federal court and Plaintiffs subsequently filed a First Amended Complaint ("FAC"). Id.; ECF No. 12 ("FAC"). In the FAC, Plaintiffs allege that two TILA violations extended the rescission

---

[3] Michael Dolan ("Dolan"), an Operations Analyst in Wachovia's Mortgage Lending Operations Department, and Michael Rapkine ("Rapkine"), Wachovia's attorney, filed declarations in support of Wachovia's motion for summary judgment, attaching exhibits. ECF Nos. 51-1 ("Rapkine Decl."), 51-7 ("Dolan Decl."). Rapkine also submitted a declaration in opposition to LSI's motion for summary judgment. ECF No. 55-1 ("Rapkine Opp'n Decl.").

[4] Apparently, Shirley is better informed than the average borrower in the real estate market. He formerly practiced law, held a real estate broker's license in the "late '70s, early '80s," and has obtained a number of adjustable rate mortgages since 1981. Rapkine Decl. Ex. C ("Shirley Dep.") at 10-11, Ex. B ("Interrog. Resp.") at 5.

period on his refinanced loan to three years from the loan closing date. FAC ¶¶ 14-15. Accordingly, Plaintiffs seek rescission of the loan and damages based on finance charges paid by Plaintiffs on the loan, which are estimated to be at least $334,647. FAC at 4.

Under TILA and one of its implementing regulations, Regulation Z,, a borrower has the right to rescind a refinancing or equity mortgage transaction within three business days of the date the borrower receives the TILDS or the NRC, whichever is later -- and within three years if the lender fails to provide such a notice. 12 C.F.R. § 226.15; 15 U.S.C. § 1635. Plaintiffs allege that the NRC incorrectly stated that they had the right to rescind the transaction before midnight of February 26, 2008 -- the same day that Shirley allegedly received and signed the NRC. FAC ¶ 14. Plaintiffs allege that the signature date on the NRC was altered to February 23, 2008 by someone other than Shirley and that the NRC contains Shirley's forged initials. Id. Likewise, Plaintiffs allege that the TILDS was: "received, signed, and dated by [Shirley] on February 26, 2008. Thereafter, someone other than [Shirley] altered the date to February 23, 2008 and forged the initial[s] 'JS'." Id. ¶ 15.

In his deposition, Shirley stated that he met with the notary, Michelle Barry, in connection with his refinancing transaction on both February 23 and February 26, 2008.[5] Shirley Dep. at 20. Shirley explained that he met with Barry twice because she did not bring all of the loan documents with her the first time. Rapkine Opp'n Decl. Ex. A at 55. Specifically, Shirley testified: "[Barry]

---

[5] Shirley also conceded that he first became aware of the alleged TILA violations sometime in 2008. Shirley Dep. at 27-28.

4

said she had received the loan documents via e-mail and that some were missing and some were not legible." Id. Shirley also testified that he signed the TILA disclosures on February 26, 2008 and contends that someone later backdated his signature to February 23, 2008, and then forged his initials approving the change. See id. at 33. On the other hand, Barry has testified that Shirley signed the disclosures on February 23, 2008. Rapkine Decl. Ex. D ("Barry Dep.") at 24-25. Barry claims that she mistakenly dated the disclosures "February 26, 2008" and then corrected the date to February 23, 2008 in front of Shirley, with Shirley's consent. Id. Barry also testified that she has no records or recollection of meeting with Shirley for a second time on February 26, 2008. Id. at 15-16. The Court does not reach the issue of whether Shirley or Barry's story is more credible since it may not make such determinations on a motion for summary judgment.

On September 14, 2010, after the suit was filed, Plaintiffs sold their Sonoma home. Various documents indicate that the sale price was $2.2 million, $240,000 more than the purchase price. Dolan Decl. Ex. N; Rapkine Decl. Ex. E.

### B. Wachovia v. LSI

On September 8, 2011, Wachovia filed a third-party complaint against LSI, who acted as Wachovia's escrow closing agent in connection with Plaintiffs' loan. ECF No. 33 ("Wachovia Compl.") ¶ 3.[6] Wachovia alleges that LSI had a contractual duty to Wachovia to provide Shirley with the NRC and TILDS and to obtain Shirley's

---

[6] Wachovia's Complaint also names as defendants Lender Processing Services, Inc. ("LPS"), LSI's parent company, and Fidelity National Information Services ("FIS"), LPS's parent company. Wachovia Compl. ¶¶ 4-5. The Court refers to LSI, LPS, and FIS as LSI.

dated signature on the closing materials, pursuant to written instructions from Wachovia. Id. ¶ 12. The crux of the complaint is that, if Plaintiffs' allegations are true, Plaintiffs' action is the proximate result of LSI's violation of the Closing Instructions set forth in the agreement between LSI and Wachovia. See id. ¶ 16. The Closing Instructions include the requirements that:

- LSI warrant "the authenticity of the signatures of each party executing each document" and that "all original documents must be signed and dated where appropriate." Wachovia Compl. Ex. A ("Closing Instructions") § 1 ¶ 4.
- "Alterations or Erasures are not permitted on any document without prior written approval from [Wachovia's] Final Documentation department. Any approved alterations or attachments must be initialed by the parties concerned." Id. § 1 ¶ 6.

Wachovia asserts claims for (1) equitable indemnity, (2) breach of contract, (3) contractual indemnity, (4) declaratory relief, (5) negligence, and (6) breach of fiduciary duty. Wachovia Compl. ¶¶ 17-47. Among other things, Wachovia seeks equitable indemnity together with attorney's fees in an amount not less than fees "incurred by Wachovia to defend this action and to prosecute the third-party complaint, as well as any damages incurred by Wachovia as a result of a settlement or judgment." Id. at 11.

### III. LEGAL STANDARD

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). Summary judgment should be granted if the evidence would require a directed verdict for the moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986). Thus, "Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Id.</u> at 252. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

**IV. DISCUSSION**

    **A. Shirley v. Wachovia**

Wachovia makes four principle arguments in favor of summary judgment against Plaintiffs: (1) Plaintiffs' rescission request was not supported by a valid tender; (2) Plaintiffs' right of rescission terminated when they sold the underlying property; (3) Plaintiffs' claim is barred by laches; and (4) the purported defects in the NRC and TILDS did not extend the rescission period to three years. Wachovia MSJ at 4-14. The Court finds that

Wachovia's second argument has merit and, therefore, need not and does not address the other three.

TILA expressly provides that a borrower's right to rescission expires upon the sale of the property:

> Time limit for exercise of right. An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this chapter [15 USCS §§ 1631 et seq.] have not been delivered to the obligor . . . .

15 U.S.C. § 1635(f).

The case law in this circuit concerning Section 1635(f) is well-settled: a sale of the underlying property terminates a borrower's TILA rescission rights. See Meyer v. Ameriquest Mortg. Co., 342 F.3d 899, 900 (9th Cir. 2003). In Meyer, the borrowers alleged that their NRC had been incorrectly dated, allowing them a three-year period to rescind the loan. 342 F.3d at 902. The Ninth Circuit held that once the borrowers sold their home, the TILA rescission provision no longer applied. Id. The court reasoned: "The regulation is clear: the right to rescind ends with the sale." Id. at 903. A number of courts, including this one, have followed Meyer and held that both voluntary and involuntary sales extinguish a borrower's right to rescission. See, e.g., Ford v. Wells Fargo Home Mortg., No. 08-4276 SC, 2008 U.S. Dist. LEXIS 98963, at *7-9 (N.D. Cal. Dec. 1, 2008).

Plaintiffs argue that Meyer is inapposite. Pls.' Opp'n at 6-7. The Court disagrees. In any event, even if Meyer were distinguishable (though it is not), the Court cannot ignore the

express language of Section 1635(f). Nor can the Court ignore the weight of authority that has applied Meyer or the principles of Meyer in cases presenting factual situations similar to the instant action. See, e.g., Macilvaine v. Wachovia Fin. Servs., NO. 08cv2384 BTM (AJB), 2009 U.S. Dist. LEXIS 78888, at *5-8 (S.D. Cal. Aug. 24, 2009); Ford, 2008 U.S. Dist. Lexis 98963, at *7-9; Davis v. Wells Fargo Bank, N.A., No. S-09-3028 FCD/GGH, 2010 U.S. Dist. LEXIS 41911, at *14-15 (E.D. Cal. Apr. 29, 2010).

Plaintiffs also contend that the Court should follow a decision by the U.S. Bankruptcy Court for the District of Columbia in In re Dawson, 437 B.R. 15 (Bankr. D.D.C. 2010). In Dawson, the bankruptcy court expressly broke with the precedent set forth in Meyer and held: "If a borrower has given timely notice of rescission and sued to enforce that right prior to the expiration of three years without having sold the property, the right of rescission has been exercised, and does not later expire after three years have passed or the property is sold." 437 B.R. at 19. The court's decision is based on Section 1635's use of the term "exercise." Id. The court reasoned that borrowers exercise their right to rescission when they notify their creditor of their intent to rescind and/or bring a suit for rescission, not when the transaction is actually rescinded. See id.

The Court declines to follow Dawson. As an initial matter, the case is inconsistent with the weight of authority in this circuit and with Meyer, which constitutes binding Ninth Circuit precedent.[7] Additionally, the Court does not find the reasoning of

---

[7] Indeed, Meyer rejected an interpretation of Section 1635 similar to the one set forth by the bankruptcy court in Dawson. Addressing

9

Dawson compelling. To the extent that the language of Section 1635 is ambiguous concerning the time frame for rescission, that ambiguity has been clarified by its implementing regulations. Specifically, 12 C.F.R. 226.23(a)(3) states that "the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." The Court also notes that Dawson's reading of Section 1635 would lead to an anomalous result -- the rescission of an agreement that has already been superseded.[8]

For these reasons, the Court GRANTS Wachovia's motion for summary judgment against Plaintiffs.

///

---

the plaintiffs' reliance on dicta from Hefferman v. Bitton, 882 F.2d 379 (9th Cir. 1989), the Ninth Circuit stated:

> In a dictum the court observed, "Even if § 1635(f) were interpreted to refer only to the time at which a consumer must notify a lender of his intention to rescind, a proposition that we do not decide, we hold that Hefferman should have sent the notice before contracting to sell her property." [Citation.] This unnecessary statement by the court is not a holding that, if an actual sale occurs, notice of rescission before the completion of the sale will be valid. The regulation is clear: the right to rescind ends with the sale.

Meyer, 342 F.3d at 903.

[8] The Court also notes that, under the circumstances, ordering rescission would be far from equitable. Rescission would allow Plaintiffs to recoup the more than $300,000 in finance charges they paid on their loan over nearly three years, effectively giving them a $1.76 million interest-free loan. Shirley has conceded that he was aware of the alleged TILA violations "[s]ometime in 2008," Shirley Dep. at 27-28, but he did not bring suit for rescission until sometime in 2010. Further, Plaintiffs do not dispute that they received all of the disclosures to which they were entitled to under the law. Nor do Plaintiffs dispute that, with the exception of the three-day rescission period, the substance of these disclosures was accurate.

10

### B. <u>Wachovia v. LSI</u>

Wachovia seeks indemnity from LSI for damages and attorney's fees incurred as a result of Plaintiffs' lawsuit. As the Court has granted Wachovia's motion for summary judgment against Plaintiffs, the issue of indemnity for damages is moot. Unhelpfully, neither Wachovia nor LSI has briefed the issue of whether Wachovia could still recover attorney's fees for defending against Plaintiffs' suit if that suit was found to be without merit.[9] As the parties have not addressed the issue, neither will the Court. In any event, the Court finds that Wachovia has failed to raise a triable issue of fact as to whether LSI engaged in any type of wrongdoing.

LSI argues that it is entitled to summary judgment because its duties are limited to those set forth in the Closing Instructions and the Closing Instructions did not direct LSI to independently verify Shirley's signature on the loan documents. LSI MSJ at 7-8. LSI also argues that if Shirley's initials were in fact forged on the closing documents, they were forged by Barry, the notary, who is not an employee or agent of LSI. <u>Id.</u> at 11.

Wachovia does not dispute that LSI did not have a duty to verify Shirley's signature. Wachovia Opp'n at 5. However, Wachovia argues that if neither Shirley nor Barry changed the date on the closing documents and added the initials "JS," then the changes must have been made by someone at LSI, without Wachovia or Shirley's consent. <u>Id.</u> This argument is unavailing as it is

---

[9] Wachovia clearly would not be entitled to attorney's fees if the Court had rejected the allegations that someone other than Shirley had altered the date on Shirley's NRC and TILDS without his consent. But the Court has not reached that issue. The Court finds that Plaintiffs' claims against Wachovia lack merit because their right to rescission terminated with the sale of his property.

11

predicated on pure speculation. Wachovia has offered no evidence that anyone at LSI altered Plaintiffs' loan documents. The only pertinent evidence before the Court on this issue is (1) Barry's testimony that she altered the documents with Shirley's consent and (2) Shirley's testimony that he did not alter the documents and he did not give Barry permission to do so. Thus, the material question is whether Barry had permission to alter the documents, not, as Wachovia contends, who altered the documents.

Wachovia also argues that LSI should be held liable for "failing to provide [Barry] with the complete package of closing documents, thereby necessitating a second visit to the Shirley residence on February 26." Id. at 6. Wachovia relies on Shirley's testimony that, on February 23, "[Barry] said she had received the loan documents via e-mail and that some were missing and some were not legible." Id. This argument also lacks merit. Whether or not Plaintiffs received an incomplete set of loan documents on February 23 is irrelevant to Wachovia's liability in the instant action. Plaintiffs' claim for rescission is predicated on the allegation that someone altered his loan documents without his consent, not that he received incomplete loan documentation. Further, even if Barry did provide Shirley with incomplete loan documentation on February 23, Shirley's testimony indicates that Barry supplemented that documentation on February 26. Rapkine Opp'n Decl. at 55.

Wachovia has failed to raise a genuine issue of material fact as to whether LSI was in some way responsible for the alleged forgery. Accordingly, the Court GRANTS LSI's motion for summary judgment against Wachovia.

**V.     CONCLUSION**

For the reasons set forth above, the Court GRANTS Wachovia's motion for summary judgment against Plaintiffs John and Julie Shirley. The Court also GRANTS LSI's motion for summary judgment against Wachovia. Both Plaintiffs' action and Wachovia's third-party action are dismissed in their entirety.

IT IS SO ORDERED.

Dated: March 29, 2012

_____
UNITED STATES DISTRICT JUDGE